IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FIRST DATA MERCHANT SERVICES CORP., <br><br> Plaintiff, <br><br> v. <br><br> SECURITYMETRICS, INC., <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case No. 2:12-cv-00495-RJS <br><br> Judge Robert J. Shelby |

First Data Merchant Services Corporation and SecurityMetrics, Incorporated both provide services to merchants who accept payment cards. First Data filed this action alleging that SecurityMetrics had breached a contract the parties entered in January 2008. The case was pending less than two weeks when the parties resolved this dispute through mediation. Following the successful mediation, but before the parties formally sought dismissal of this action, First Data filed in Maryland a second lawsuit asserting new claims allegedly arising out of SecurityMetrics' post-settlement conduct in the marketplace.

Notwithstanding that this lawsuit was settled months earlier, SecurityMetrics seized on the fact that the parties had not yet filed dismissal papers with the court. In what appears to be an effort to frustrate First Data's choice to pursue its post-settlement claims in Maryland,

SecurityMetrics moved to stay the Maryland action, and purported to answer First Data's claims in this lawsuit – claims SecurityMetrics acknowledges it had already settled. SecurityMetrics filed with its Answer a number of counterclaims, including five declaratory judgment counterclaims directly inverse to First Data's Maryland claims. Arguing that this action was filed before First Data's Maryland action, SecurityMetrics urges the court to invoke the first-to-file doctrine and enjoin the Maryland action. In response, First Data moves the court to dismiss SecurityMetrics' Counterclaims, or to transfer them to Maryland.

Before examining the first-to-file rule's application, the court must independently examine the basis for its continued jurisdiction. This examination reveals that the exercise of jurisdiction is inappropriate here. The court lacks ancillary jurisdiction over SecurityMetrics' Counterclaims due to the lack of factual interdependence between those claims and the pre-litigation contract claims the parties have settled. This lack of interdependence also counsels the court to decline exercising so-called independent jurisdiction over SecurityMetrics' Counterclaims on the sole basis that the parties are diverse. The court also declines to exercise supplemental jurisdiction over the remaining claims as they substantially predominate over the claims from which the court had original jurisdiction.

In short, the court declines SecurityMetrics' invitation to exercise jurisdiction over post-settlement claims unrelated to the contract dispute that formed the sole basis for this lawsuit when it was filed. SecurityMetrics' Counterclaims are dismissed without prejudice to refile them.

## I. **Background**

First Data and SecurityMetrics operate in the payment card industry. First Data offers payment processing services to merchants who accept payment cards. SecurityMetrics provides

solutions to businesses for meeting compliance standards in the payment card industry. In January 2008 the companies entered into a contractual relationship. Among other things, the resulting agreement provided First Data access to Security Metrics' Merchant Compliance Console, a web-based portal that tracks data from various financial institutions' merchant compliance programs. The contract also gave First Data access to SecurityMetrics' data feeds and certain regularly issued reports.

The collaborative relationship between the parties soured when First Data decided to offer in-house the data security monitoring and certification services it had contracted to obtain from SecurityMetrics. By public notice dated April 24, 2012, First Data announced its intention to discontinue using SecurityMetrics' data security monitoring and certification services beginning June 1, 2012, seven months prior to the expiration of the January 2008 contract. Following First Data's April 24 notice, SecurityMetrics stopped providing data and services to First Data under the agreement.

On May 19, 2012, First Data informed SecurityMetrics that it was terminating the contract. Two days later, on May 21, 2012, First Data filed this action (the "Utah Action") alleging that SecurityMetrics breached the January 2008 contract when it stopped providing data and services. On May 24, 2012, this court held a hearing on First Data's motion for a temporary restraining order. At the conclusion of that hearing Judge Stewart denied First Data's motion.

Within days of receiving the court's ruling, the parties conducted a marathon mediation session before the Honorable William Bohling, a retired member of the Utah State bench. The mediation ran approximately 18 hours, concluding at 2:30 a.m. on May 31, 2012. Before adjourning, the parties reduced several key settlement terms to a written agreement styled "Terms of Settlement." The Terms of Settlement, signed by the parties, contained six "Essential

Terms" the parties intended to include in a long-form settlement document they agreed to prepare after the mediation. One of the six Essential Terms required First Data to dismiss its pending Utah Action with prejudice. Despite what appear to have been earnest efforts by both parties in the months following the mediation, they failed to reach consensus on a mutually acceptable long-form settlement agreement. Neither party submitted to the court papers seeking formal dismissal of this case.

On August 27, 2012, approximately three months after the successful mediation, and near the time negotiations collapsed on the terms of a long-form settlement agreement, First Data filed a second lawsuit against SecurityMetrics. First Data seeks in the second action, filed in the United States District Court for the District of Maryland (the "Maryland Action"), preliminary and permanent injunctive relief on a series of new claims allegedly arising out of SecurityMetrics' conduct in the marketplace following the May 2012 mediation and settlement of the Utah Action. First Data's claims in the Maryland Action are unrelated to the breach of contract claims it asserted in the Utah Action.

It seems SecurityMetrics prefers the courts in Utah to those in Maryland. In what appears to have been an effort to frustrate First Data's choice of a Maryland forum to pursue its new claims, SecurityMetrics submitted several filings designed to cause First Data's Maryland Action to be transferred to Utah. SecurityMetrics filed on September 17, 2012, a motion to stay the Maryland Action. Alternatively, SecurityMetrics requested the Maryland court transfer the case to Utah for consolidation into this action. After entertaining a short stay to allow this court an opportunity to resolve the motions here addressed, the Maryland court denied SecurityMetrics' motion. The parties are now actively litigating the Maryland Action.

On September 4, 2012, shortly before it filed its motion seeking to stay the Maryland Action, SecurityMetrics filed what purports to be an answer to First Data's claims in this case – claims SecurityMetrics acknowledges were resolved months earlier during the May 2012 mediation. With its Answer SecurityMetrics also asserted counterclaims. Eight days later, on September 12, 2012, SecurityMetrics filed its Amended Answer and Counterclaims.[1]

SecurityMetrics now asserts ten counterclaims. Five counterclaims request declaratory judgment directly inverse of First Data's claims in the Maryland Action (the "Declaratory Judgment Counterclaims"). Three additional counterclaims focus on First Data's alleged breaches of the settlement terms the parties negotiated in May 2012 in connection with resolving the Utah Action (the "Settlement Counterclaims"). SecurityMetrics' remaining two Counterclaims are post-settlement counterclaims, and despite SecurityMetrics' attempts to characterize them as relating to First Data's original Utah Complaint, they relate more closely to post-settlement conduct (the "Post-Settlement Counterclaims").[2]

---

[1] Dkt. No. 43.

[2] In particular, SecurityMetrics asserts counterclaims for intentional interference with prospective business advantage and unfair competition. The first such counterclaim concerns First Data's alleged disruption of relationships between SecurityMetrics and merchants and ISOs that also have a relationship with First Data. SecurityMetrics alleges that First Data has attempted to induce these merchants and ISOs to terminate their business with SecurityMetrics. The second such counterclaim concerns generalized allegations of unfair competition. On the face of SecurityMetrics' Amended Complaint, the overwhelming majority of the conduct that could form the basis for these counterclaims is post-settlement conduct: alleged penalties First Data charged merchants for using SecurityMetrics' programs; an allegedly oppressive First Data billing policy that seeks to dissuade merchants from choosing SecurityMetrics; allegations that First Data falsely accused SecurityMetrics of inaccurate reporting, and various other additional improper business actions. While some facts alleged in the counterclaims fall in the time period before settlement – alleged industry trade show business politicking, and First Data's repudiation of the initial contract – as a basis for the counterclaims, the trade show politicking is minimal

5

II. **Issues Presented**

Now before the court is SecurityMetrics' motion to enjoin the Maryland Action[3] and First Data's motion to dismiss SecurityMetrics' Counterclaims or to transfer them for consolidation into the Maryland Action.[4] Both parties separately moved the court to dismiss First Data's claims in this case on the basis that dismissal was jointly contemplated in the Terms of Settlement negotiated by the parties during the May 2012 mediation.[5] The court conducted a hearing on these issues on December 5, 2012. During the hearing the court dismissed First Data's underlying Complaint with prejudice. The parties sought this relief in their respective moving papers, and each stipulated to the relief at the hearing.

Dismissal of the underlying Complaint leaves pending only SecurityMetrics' Counterclaims. SecurityMetrics argues that its Counterclaims and First Data's Maryland Action should be heard here in the Utah Action. Conversely, First Data argues that SecurityMetrics' Counterclaims should be dismissed or transferred to the Maryland Action. Both parties encourage the court to invoke the common law "first-to-file" doctrine to resolve the forum question in their favor. *See Shannon's Rainbow, LLC v. Supernova Media, Inc.*, 683 F.Supp.2d 1261, 1278 (D.Utah 2010).[6] SecurityMetrics argues the Utah Action was first filed (in May

---

when compared to the alleged post-settlement business interference, and First Data's repudiation of the contract was resolved in the parties' settlement agreement.
  [3] Dkt. No. 44.
  [4] Dkt. No. 50.
  [5] *See* Dkt. Nos. 50 and 83.
  [6] The first-to-file doctrine states that "the first court who obtains jurisdiction over the same parties and issues is the appropriate court to resolve the dispute." *Shannon's Rainbow*, 683 F.Supp.2d at 1278. Three conditions must be satisfied before the first-to-file rule may be invoked: "(1) chronology of the actions, (2) similarity of the parties, and (3) similarity of the issues." *Id.* SecurityMetrics argues that the disputes should stay in Utah because their counterclaims relate back to the date of First Data's underlying complaint and the Utah Action is

6

2012), and application of the doctrine therefore requires the Maryland Action be consolidated here. In contrast, First Data urges the court to examine the substance of SecurityMetrics' Counterclaims. First Data argues that its Maryland Action should be deemed first filed because SecurityMetrics' Counterclaims relate exclusively to post-settlement conduct wholly unrelated to the contract dispute that formed the genesis of this case.

Before the court engages in the analysis suggested by the parties, however, the court must first independently examine whether dismissal of the underlying Complaint by virtue of settlement impairs the court's jurisdiction. Because the court's jurisdictional inquiry compels dismissal of SecurityMetrics' Counterclaims, the court does not reach application of the first-to-file doctrine.

### III. **Jurisdiction**

Having dismissed First Data's underlying Complaint at the request of both parties, the court must now evaluate whether it retains jurisdiction over SecurityMetrics' Post-Settlement Counterclaims. "This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). This threshold inquiry and analysis is "inflexible and without exception." *Butler v. Biocore Med. Techs., Inc.*, 348 F.3d 1163, 1166 (10th Cir. 2003) (citing *Steel Co.,* 523 U.S. at 94).

---

the first action to make possible the presentation of all the issues. First Data argues that the Maryland Action is the action where jurisdiction first attached, that the first-to-file doctrine is flexible, and that this action and the claims in the Maryland Action are not "substantially similar" to warrant moving all claims in the Maryland Action to Utah. Because the court finds it lacks jurisdiction over SecurityMetrics' Counterclaims, we do not reach the merits of the first-to-file issue.

Given that the parties settled the contract dispute that gave rise to this action, the question here is whether the court may or should extend jurisdiction in the same case to reach new disputes arising from a wholly-separate contract – the settlement agreement negotiated by the parties during their May 2012 mediation.  The doctrines of ancillary and supplemental jurisdiction provide potential avenues for exercising jurisdiction.  SecurityMetrics also argues an alternative source of jurisdiction under the *Kokkonen* line of cases: the so-called independent basis for jurisdiction.  The court finds each of these jurisdictional doctrines insufficient as a basis for retaining jurisdiction to adjudicate SecurityMetrics' counterclaims.

A. <u>Ancillary Jurisdiction</u>

Ancillary jurisdiction is a "creature of necessity" that survived the codification of supplemental jurisdiction in 28 U.S.C. § 1367.  *Peacock v. Thomas*, 516 U.S. 349, 359 (1996); *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 85 (3rd Cir. 2011).  Ancillary jurisdiction permits a district court to retain jurisdiction over disputes arising from a settlement agreement where a court previously dismissed the underlying action, and that court's order of dismissal demonstrates the court's intent to retain continuing jurisdiction over the matter.  Courts may also retain jurisdiction where an order of dismissal incorporates the settlement agreement or its terms. *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994); *McKay v. U.S.*, 207 Fed.Appx. 892, 894 (10th Cir. 2006).

This court's exercise of ancillary jurisdiction is subject to the requirements set forth in *Kokkonen v. Guardian Life Ins. Co. of America*,  511 U.S. 375, 379-380 (1994).  *Kokkonen* allows a court to exercise ancillary jurisdiction: (1) "to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent," and (2) "to enable a

court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." 511 U.S. at 379-380.

Here, SecurityMetrics' Settlement Counterclaims are in no way "factually interdependent" with First Data's underlying breach of contract claims which arise out of the parties' pre-litigation January 2008 contract for data security monitoring and certification services. Nor is there any evidence the parties intended that this court would retain jurisdiction over disputes arising from the settlement agreement. The Terms of Settlement prepared by the parties at the conclusion of the May 2012 mediation make no reference to continuing jurisdiction over the settlement. The court's knowledge of First Data and SecurityMetrics' disputes does nothing to incorporate the settlement agreement's enforcement into the order of dismissal. *Id.* at 381 ("The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.").

Even less factually interdependent are SecurityMetrics' Declaratory Judgment Counterclaims relating to the Maryland Action and SecurityMetrics' Post-Settlement Counterclaims. The Declaratory Judgment Counterclaims depend on and incorporate the causes of action First Data asserts in the Maryland Action. The Post-Settlement Counterclaims are similarly independent and necessarily arise only after the underlying dispute was resolved by the parties.

Neither is ancillary jurisdiction necessary here to protect the court's authority or vindicate its decrees in this action. Indeed, save for denying First Data's motion for a temporary restraining order, "the only order here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." *Id.* at 380. The

9

court "did not order the parties to comply with the terms of the agreement and it did not condition dismissal upon future compliance." *McKay*, 207 Fed. Appx. at 895.

A different result does not follow here merely because the parties had not yet filed with the court papers formally seeking dismissal of the action before SecurityMetrics filed its Settlement Counterclaims. "Simply put, the court would no less violate the outer limits of ancillary jurisdiction in resolving the parties' privately created settlement agreement because of their still live controversy as it would if the court had already dismissed the underlying suit." *Dailey v. Park*, 468 F.Supp.2d 209, 214 (D.D.C. 2007).

The elements necessary to support ancillary jurisdiction over SecurityMetrics' Counterclaims are noticeably absent here.

      B.      <u>Independent Basis for Jurisdiction</u>

The court has also received and reviewed SecurityMetrics' Notice of Supplemental Authority (Dkt. No. 92). SecurityMetrics points to language from *Kokkonen* and other cases suggesting that an independent basis for jurisdiction over this action may allow the court to exercise jurisdiction over the settlement dispute even where ancillary jurisdiction is otherwise lacking. *Kokkonen*, 511 U.S. at 381-82 ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."); *Morris*, 39 F.3d at 1110-11 ("Without reservation by the court, ancillary jurisdiction is unavailable to enforce a settlement agreement; there must be an independent basis for federal jurisdiction."). SecurityMetrics argues that an independent basis of jurisdiction exists because the parties are diverse and the amount in controversy is alleged to be over $75,000.

The court has carefully reviewed SecurityMetrics' arguments and cited authorities. It appears the Tenth Circuit in *Morris* did not consider whether diversity jurisdiction alone is

10

sufficient to meet *Kokkonen*'s "independent basis" inquiry. *Morris* did not involve diverse parties and, beyond what SecurityMetrics cites, there is only one short sentence in the opinion noting that the parties are not diverse. *Morris*, 39 F.3d at 1111.

The court is aware of some non-binding authority addressing the issue in other jurisdictions. A small handful of cases considering the issue have concluded that diversity jurisdiction alone is sufficient to vest a court with discretion to exercise independent jurisdiction over settlement disputes.[7]

In light of the discretion other circuits afford a court under the independent basis for jurisdiction analysis, the lack of explicit treatment of the issue in the Tenth Circuit, and the unusual procedural posture in this case, the court declines to further adjudicate SecurityMetrics' Counterclaims simply because the parties are diverse. *Kokkonen* is clear that post-settlement disputes are new claims with new underlying facts and should be adjudicated in a new action. *Kokkonen*, 511 U.S. at 381 ("The facts to be determined with regard to . . . alleged breaches of contract are quite separate from the facts to be determined in the principal suit, and automatic jurisdiction over such contracts is in no way essential to the conduct of federal-court business."). *Kokkonen*'s "primary concern . . . was that enforcement of the agreement constituted more than just a continuation of the suit." *Dailey*, 468 F.Supp.2d at 214.

---

[7] *Limbright v. Hofmeister*, 566 F.3d 672, 674-75 (6th Cir. 2009) ("We join these circuits and hold that a district court may rely on any basis of jurisdiction to summarily enforce a settlement agreement that produced the dismissal of an earlier federal suit."); *Blue Cross & Blue Shield Ass'n v. Am. Express Co.,* 467 F.3d 634, 638 (7th Cir. 2006) ("As long as §1332 supplies authority to decide, the court may act without a fresh complaint.). Two other cases invoke this issue but do not address the discretion involved. *Bailey v. Potter,* 478 F.3d 409, 412 (D.C.Cir. 2007) (addressing the question without resolving it); *U.S.I. Props. Corp. v. M.D. Const. Co.,* 230 F.3d 489, 500 (1st Cir. 2000) (not addressing a court's discretion because diversity was obviously lacking).

Here, unique procedural facts dictate that SecurityMetrics' Counterclaims be dismissed without prejudice to refile them. The Settlement Counterclaims have no relation to the original Complaint. The Declaratory Judgment Counterclaims clearly and explicitly relate to First Data's claims in the Maryland Action. The Post-Settlement Counterclaims are further removed and even more broad. SecurityMetrics' efforts during the December 5 hearing to relate these claims back First Data's original Complaint were strained. With First Data's underlying Complaint now dismissed, at least in part upon SecurityMetrics' motion, SecurityMetrics' Answer relates back to nothing in the original Complaint.

In a sense this was also true when SecurityMetrics first filed its Counterclaims in September 2012. SecurityMetrics itself subsequently filed a motion to enforce the settlement agreement, and requested that First Data's underlying Complaint be dismissed with prejudice. Its position confirms the court's conclusion that SecurityMetrics' Answer was something of a legal fiction – SecurityMetrics purported to answer a Complaint it believed was already resolved by settlement, and it did so for the reason that its Answer provided SecurityMetrics the possibility of a jurisdictional hook for unrelated counterclaims designed to pull First Data's Maryland Action to Utah.

Finally, SecurityMetrics' citation to *Hardage v. United States,* 982 F.2d 1491, 1496 (10th Cir. 1993) is inapposite. In *Hardrage*, the parties disputed the preliminary question whether they had reached an enforceable settlement agreement. 982 F.2d 1491, at 1495. Here, neither party disputes that fact. Indeed, both parties filed motions requesting the court enforce the agreement.

    C.    <u>Supplemental Jurisdiction</u>

Neither party urges the court to invoke supplemental jurisdiction to entertain the dispute over SecurityMetrics' Counterclaims. Nevertheless because supplemental jurisdiction provides

one avenue to reach the Counterclaims, the court considers whether it should exercise this discretionary jurisdiction under the circumstances here presented.

Federal courts may exercise supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). But if the court finds that a settlement agreement dispute "substantially predominates over the claim or claims over which the district court has original jurisdiction" the court "may decline to exercise this jurisdiction." 28 U.S.C. §1367(c).

Here, the court finds that the parties' post-settlement disputes substantially predominate over the now resolved breach of contract claims presented in First Data's underlying Complaint. SecurityMetrics' Settlement Counterclaims concern a settlement agreement not in existence at the time of First Data's Complaint. SecurityMetrics' Declaratory Judgment Counterclaims clearly relate to and expressly reference First Data's claims in the Maryland Action. SecurityMetrics' Post-Settlement Counterclaims largely concern First Data's post-settlement conduct in the marketplace.

Exercising supplemental jurisdiction over counterclaims with such a tenuous link to the original Complaint would do nothing to vindicate "judicial economy, convenience and fairness to the litigants." *Thatcher Enters v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). Rather, reaching for jurisdiction over a settlement dispute that contemplates dismissal of this case as one of its terms, or over post-settlement business disputes between the parties, seems to undermine the rationale for supplemental jurisdiction. *Dailey,* 468 F.Supp.2d at 214 (noting that concerns of judicial economy, convenience, and fairness to litigants would not be served when

"the end game contemplated by the parties' settlement agreement includes the filing of one of two stipulations of dismissal").

*Dailey* is instructive on both the issue of supplemental jurisdiction and the jurisdictional issues before the court generally.  In *Dailey* a settlement agreement between two parties contemplated dismissal of the underlying action, an options contract dispute, regardless of the outcome of further actions arising out of the settlement agreement (closing on a condominium sale). *Id.* at 210.  The parties filed with the court a joint motion for dismissal but the court had yet to rule before a post-settlement dispute arose. *Id.* at 211.  Mediation, some of it court-assisted, ensued. *Id.*  When mediation failed to quell the parties' disputes, both parties filed motions with the court to enforce the settlement agreement in their favor. *Id.*  Relying largely on the same cases cited herein, the court declined to exercise jurisdiction over the parties' disputes.  The court reached this result notwithstanding the "advisory assistance" it provided the parties. *Id.* at 211 (the court did not agree that this advisory assistance "sufficed for *de facto* judicial ratification of the agreement") (emphasis in original).

The disputes presented in SecurityMetrics' Settlement Counterclaims – the only counterclaims even tangentially related to the dispute in this case – are even further removed than those in *Dailey*: First Data and SecurityMetrics never sought nor received assistance from the court in resolving disputes arising out of alleged breaches of the settlement agreement.  Much like in *Dailey*, the "end game contemplated by the parties' settlement agreement includes the filing of . . . stipulations of dismissal[]." *Id.* at 214.   As in *Dailey*, "[n]o order of this court adopts the parties' settlement agreement" and "[i]t remains . . . a privately constituted agreement between the parties devoid of judicial ratification or approval." *Id.*  Supplemental jurisdiction is not proper in this case.

IV. **Conclusion**

The court notes that the jurisdictional issues here are fraught with the somewhat unique procedural posture of this case. On the facts presented, the court concludes it lacks ancillary jurisdiction over SecurityMetrics' Counterclaims. To the extent the court has discretion to exercise so-called independent jurisdiction over the counterclaims on the basis that the parties are diverse, the court declines to do so. For the reasons stated, the court declines to reach for supplemental jurisdiction over the counterclaims. Accordingly, the court GRANTS First Data's motion to dismiss SecurityMetrics' Counterclaims (Dkt. No. 50). The court DENIES SecurityMetrics' motion to enjoin the Maryland Action (Dkt. No. 44). SecurityMetrics' Counterclaims are dismissed without prejudice to refile them jointly or separately, as a new action here or elsewhere, or in the Maryland Action, if appropriate.[8]

"*Kokkonen* is about adjudicatory competence, not the number of filing fees a plaintiff must pay." *Blue Cross & Blue Shield Ass'n*, 467 F.3d at 638. Given the virtually nonexistent factual interdependence between SecurityMetrics' Counterclaims and First Data's dismissed underlying Complaint, the court lacks adjudicatory competence over the Counterclaims in this case. The availability of possible discretionary jurisdiction does nothing to cure this defect.

As the court considered and found helpful SecurityMetrics' post-hearing filing, the court DENIES First Data's motion to strike SecurityMetrics' Notice of Supplemental Authority (Dkt. No. 95).

---

[8] It appears, but the court is not concluding, that at least SecurityMetrics' Declaratory Judgment Counterclaims likely are compulsory in the Maryland Action. However, that issue is not before the court.

These decisions, together with the court's ruling during the December 5, 2012 hearing, granting the motions by both parties to dismiss with prejudice First Data's underlying Complaint, render any remaining motions moot. This case is therefore CLOSED.

DATED this 20th of February, 2013.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge
